CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 17 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JENNIFER ELAINE HALL, | ) |
| | ) Civil Action No. 7:05CV304 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| METROPOLITAN LIFE INSURANCE | ) By: Hon. Glen E. Conrad |
| COMPANY | ) United States District Judge |
| | ) |
| and | ) |
| | ) |
| GENERAL ELECTRIC COMPANY, | ) |
| Administrator, GE LIFE, | ) |
| DISABILITY, AND MEDICAL | ) |
| PLAN | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, the defendants' motion will be granted and the plaintiff's motion will be denied.

**Factual and Procedural Background**

The plaintiff, Jennifer Hall, is the widow of Tommie B. Hall, an employee of defendant General Electric Company ("GE") who was covered by an employee welfare benefit plan. Defendant Met Life issued the group policy to GE and is the claims fiduciary for the plan. On July 16, 2004, Mr. Hall died as a result of a bee sting on the bridge of his nose. The plaintiff submitted claims for Basic Life, Accidental Death and Dismemberment, and Personal Accident Insurance benefits on August 2, 2004. She received the Basic Life benefit in the amount of $118,420.00, but was denied benefits under the latter two benefit provisions, which had a combined total payment of $284,208.00. The plaintiff appealed Met Life's partial denial of her

claim, but Met Life upheld its decision in a letter dated April 5, 2005. On April 25, 2005, the plaintiff filed suit in the Roanoke City Circuit Court. On May 18, 2005, the defendants removed the action to this court.

The parties agree upon most of the facts of the case, with the significant exception that they dispute whether Mr. Hall had an allergy to bee stings which prompted a severe anaphylactic reaction, or whether he died as a result of localized swelling resulting from the bee sting which constricted his airways and caused his demise.

## Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Pursuant to Rule 56(c), summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As the parties noted in their briefs, both the GE employee welfare benefit plan and, consequently, the decision in this matter, are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), and its accompanying case law. The issue presented by both motions for summary judgment is whether the denial of the plaintiff's claim for Accidental Death and Dismemberment and Personal Accident Insurance benefits by the defendants was appropriate under the relevant standard of review. The parties dispute the proper

2

standard to be applied. In addition, the plaintiff disagrees with defendant Met Life's attempt to raise in this court an additional basis for its denial of benefits which was not disclosed until its final decision letter following the plaintiff's administrative appeal.

I. Standard of Review

The plaintiff contends that the appropriate standard of review in this case is de novo review. Although the plaintiff acknowledges that "in most benefit claims cases, the standard is a 'modified abuse of discretion' standard," she argues that in this case that standard is inappropriate because of the lack of language in the claim file that specifically grants discretionary authority over claims to the plan administrator.

As the defendant notes, under ERISA, a denial of benefits is reviewed de novo, unless the benefit plan gives the administrator discretion to determine eligibility or to construe the terms of the plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The plaintiff's contention that the court should rule as a matter of law that Mr. Hall's death was not excluded by the policy is not as firmly supported by the decision in Johannssen v. Dist. No. 1–Pacific Coast Dist., MEBA Pension Plan, 292 F.3d 159 (4th Cir. 2002), as she maintains. In that case, the United States Court of Appeals for the Fourth Circuit held that the determination as to whether an entity was a legal successor to another entity as the plan sponsor was a legal question properly addressed under the de novo standard. Id. at 169. That issue is quite distinct from the issue before the court, namely, whether the plan language gave the fiduciary the power to construe terms and determine eligibility. See also Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan, 201 F.3d 335, 340-43 (4th Cir. 2000).

To begin the inquiry into the proper standard of review, the court turns first to the question of "whether [the] benefit plan's language grants the administrator or fiduciary discretion

3

to determine the claimant's eligibility for benefits." Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 268 (4th Cir. 2002). The plan that covered Mr. Hall stated that

> *The carrier will make all determinations with respect to benefits under this Plan.* Accordingly, the management and control of the operation and administration of claim procedures under the Plan, *including the review and payment or denial of claims* and the provision of full and fair review of claim denial pursuant to Section 503 of the Act, shall be vested in the carrier.

Administrative Record at 575 (emphasis added). The plain language of the plan clearly states that the carrier will make all decisions regarding the review and payment or denial of claims. See Admin. Record at 578 ("10. 'Carrier' The term 'carrier' means General Electric Company or, when so designated by the Company, insurance companies or other claims payers."). The question to be decided, then, is whether this language clearly conveys an intent to vest discretionary authority in the administrator, or to "delegate final authority to determine eligibility to the plan administrator." Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 523 (2000). In Feder, the Fourth Circuit noted that although no specific language is required to trigger the abuse of discretion standard of review, where there is not an explicit grant of discretionary authority, the grant must clearly indicate an intention to delegate final discretionary authority. Id.

A case-by-case analysis is required to determine whether the language of any given plan creates discretion in the plan administrator to construe doubtful terms or to settle disputed eligibility questions. De Nobel v. Vitro Corp., 885 F.2d 1180, 1187 (4th Cir. 1989). Where administrators had power to "determine all benefits and resolve all questions pertaining to the administration, interpretation and application of the Plan provisions," the Fourth Circuit held that an abuse of discretion standard was appropriate. Id. The language at issue in De Nobel reasonably mirrored the language at issue here, although the relative similarity alone is not dispositive. The defendant has reserved the right to make all determinations with respect to

4

benefits, in addition to retaining management and control over claim procedures, and complete review of claims. Therefore, the plan implicitly reserves discretionary authority over term construction and eligibility determinations.

This result admittedly stands in contrast to the ruling of the Eastern District of North Carolina in Bursell v. Gen. Electric Co., 243 F. Supp. 2d 460 (E.D. N.C. 2003), which found that language substantially similar to that at issue here did not clearly indicate that the authority granted was final, and therefore, did not require an abuse of discretion standard of review. Id. at 468. The Bursell opinion noted that two other courts had previously considered the precise language and rendered inconsistent opinions. Id. One of those two courts was the Middle District of North Carolina, which determined that the language gave "authority to determine the eligibility of claimants seeking disability benefits," and thus provided for review under the abuse of discretion standard. Starnes v. Gen. Electric Co., 201 F. Supp. 2d 549, 556 (M.D. N.C. 2002). The Middle District's ruling espouses the better view.[1]

The Northern District of Illinois, however, held that the same language as that at issue here did "not come close to granting 'the carrier' discretion to determine benefits or interpret the terms of the Plan." Carter v. Gen. Electric Co., 2001 WL 170464, at *4 (N.D. Ill. Feb. 20, 2001). The Court considered the fact that the summary plan description includes an express grant of authority to the plan administrator, but dismissed the summary plan description's language as

---

[1] It should be noted that in Starnes, the parties did not contest the issue as to whether the language conferred discretion. Nonetheless, the Court, in dicta, noted its agreement with their assessment, and explained its reasoning. Starnes, 201 F. Supp. 2d at 555-56. The Court found that, by virtue of the plan language, the administrator "is charged with the authority to determine the eligibility of claimants seeking disability benefits. In addition, the fact that the [administrator] is responsible for controlling the appeal of denied claims indicates that it is the ultimate decisionmaker with respect to benefits." Id. See also Lake v. Metro. Life Ins. Co., 73 F.3d 1372, 1377 (6th Cir. 1996) (finding that identical language "unequivocally grants Met Life discretionary authority to determine who is eligible for benefits," but "does not, however, give Met Life discretion over decisions concerning the level of benefits payable.").

5

largely irrelevant. Instead, the Court explained, "the problem is that [the grant of discretion] cannot be found anywhere in the STD Plan document itself." Id. at *5. The ruling in Carter is distinguishable and not binding upon this court. In Carter, the Court was confronted with the question of whether to construe the terms of an employee benefits policy in accordance with the more explicit language in the summary plan description. The Court followed the holding of Reinersten v. Paul Revere Life Ins. Co., 2001 WL 40796, at *6-8 (N.D. Ill. Jan. 16, 2001), which found that, in cases where the actual policy language is deficient, additional language in the summary plan description cannot be used to enhance the meaning of the policy.

Dating back to the United States Supreme Court decision in Firestone, a grant of discretionary authority to a plan administrator or fiduciary may be manifested in one of two ways. The opinion in Firestone stated that "a denial of benefits ... is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits *or* to construe the terms of the plan." Firestone, 489 U.S. at 115 (emphasis added). The Court's dictate is clearly in the alternative: A plan vests discretionary authority in the administrator if it authorizes the administrator to either determine eligibility *or* construe the plan terms. See also Feder, 228 F.3d at 522 ("Rather, we examine the terms of the plan to determine if it vests in its administrators discretion either to settle disputed eligibility questions *or* to construe doubtful provisions of the Plan." (emphasis added)); De Nobel, 885 F.2d at 1187. Under this standard, it is unnecessary to determine whether the language of the plan here meets both requirements, however, it appears that both requirements are fulfilled.

The plan clearly states that eligibility is to be determined by the carrier. It also includes the blanket statement that the carrier "will make all determinations with respect to benefits." Considering the ample body of case law on the subject, this all-encompassing language is not

6

fully satisfactory, but it suffices to alert potential plan participants to the wide-ranging powers being claimed by the carrier. See Feder, 228 F.3d at 523 (outlining some situations where discretion was created by implication). Moreover, the plan explicitly reserves for the carrier the right to amend the policy of insurance, a power that necessarily includes the power to construe and overhaul policy terms.

The conclusion that the plan language here confers discretion upon the defendants is consistent with the Fourth Circuit's statement in Feder that "if the terms of a plan indicate a clear intention to delegate *final* authority to determine eligibility to the plan administrator, then this Court will recognize discretionary authority by implication." Feder, 228 F.3d at 523 (emphasis added). The requirement of finality does not preclude abuse of discretion review here because the language of this claim provides a clear indication of intent. The language gives the carrier the right to make "all determinations," and vests "full and fair review of claim denial" in the carrier. The plain meaning of the word "full," particularly as it modifies the phrase "review of claim denial," constrains this court to conclude that the plan sufficiently conveys "final authority" over eligibility determinations to the carrier. See also 29 U.S.C. § 1133 (requiring every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary"). Consequently, defendant Met Life's decision regarding the plaintiff's appeal of the denial of Accidental Death and Dismemberment and Personal Accident Insurance benefits will be reviewed for abuse of discretion.

II. Application of the Abuse of Discretion Standard

Under the abuse of discretion standard, the court is constrained to review a fiduciary's exercise of discretion only to determine whether it was reasonable and within the scope of the

7

fiduciary's authority. See Gallagher, 305 F.3d at 268. A decision evaluated under the abuse of discretion standard is "reasonable if it is 'the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997) (quoting Brogan v. Holland, 105 F.3d 151, 161 (4th Cir. 1997)). In Booth v. Wal-Mart Stores Inc. Assocs. Health and Welfare Plan, 201 F.3d 335 (4th Cir. 2000), the Fourth Circuit listed eight non-exhaustive factors that a court may consider in determining the reasonableness of a fiduciary's exercise of discretion. Those factors are:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id. at 342-43. Applying those factors to the record before the court, it is clear that Met Life did not abuse its discretion or act outside the scope of its discretion.

Consistent with the broad grant of authority contained in the plan, Met Life found that the exclusion based on disease or physical impairment applied to the plaintiff's claim. In reaching this conclusion, Met Life consulted the plaintiff's submissions, including a videotape of news broadcasts related to Mr. Hall's death, medical records, website information on allergies and bee stings, and a letter from Mr. Hall's family physician. In addition, Met Life referred the medical records and doctor's letter to an independent physician consultant for review and utilized the doctor's report in making its decision. The consultant's report indicated that Mr. Hall's anaphylaxis was the ultimate cause of his death, a point upon which the death certificate, which

Met Life also considered, concurs. The consideration given to the various elements of the case presented to Met Life appears to have been principled and deliberate.

The plaintiff contends that Met Life's decision to apply the exclusionary provision to Mr. Hall's case was in error, and therefore an abuse of discretion. The plaintiff bears the burden of proving that death was the result of accidental injuries. See Danz v. Life Ins. Co., 215 F. Supp. 2d 645, 650 (D. Md. 2002). In an attempt to meet her burden, she looks to the 1926 case of Mut. Life Ins. Co. v. Dodge, 11 F.2d 486 (4th Cir. 1926) as support for the proposition that an "idiosyncrasy" or "hypersusceptibility" (such as an extreme reaction to novocaine) is "not an infirmity or disease, but merely a peculiarity of the individual." Id. at 487. The chief problem with the plaintiff's reliance on this case is that the law it created has been effectively rendered obsolete by neglect. Last mentioned by the Fourth Circuit in 1950, the currency of Mut. Life Ins. was perhaps most aptly explained by the United States District Court for the District of Maryland in Handler v. Metro. Life Ins. Co., 193 F. Supp. 2d 864, 866 n.2 (D. Md. 2002). See C.Y. Thomason Co. v. Lumbermens Mut. Cas. Co., 183 F.2d 729, 733 (4th Cir. 1950). The Court in Handler noted that the case "[was] decided so long ago that [its] conception ... of medicine, disease and treatment ha[s] little relevance today." Handler, 193 F. Supp. 2d at 866 n.2.

The plaintiff cites several additional cases for the proposition that some forms of heightened susceptibility, particularly a predisposition for high altitude pulmonary edema and high altitude cerebral edema, do not fall within the parameters of the standard disease exclusion. See Chale v. Allstate Life Ins. Co., 353 F.3d 742 (9th Cir. 2003); Paulissen v. U.S. Life Ins. Co., 205 F. Supp. 2d 1120 (C.D. Cal. 2002). However, neither of the policies at issue in those cases were governed by ERISA.

9

In <u>Adkins v. Reliance Standard Life Ins. Co.</u>, 917 F.2d 794 (4th Cir. 1990), the Fourth Circuit adopted the rule that for a pre-existing infirmity or disease to be a bar to a beneficiary's recovery, it must be a substantial factor in the loss at issue. <u>Id.</u> at 797 (noting that "[a] mere 'relationship' of undetermined degree is not enough"). In this case, it is clear that Mr. Hall's susceptibility to bee stings was just such a "substantial contributing cause." <u>Id.</u> (quoting <u>Colonial Life & Acc. Ins. Co. v. Weartz</u>, 636 S.W. 2d 891, 894 (Ky. Ct. App. 1982); <u>Quesinberry v. Life Ins. Co.</u>, 987 F.2d 1017, 1028 (4th Cir. 1993) (breaking the <u>Adkins</u> test into two steps: "first, whether there is a pre-existing disease, pre-disposition, or susceptibility to injury; and, second, whether this pre-existing condition, pre-disposition, or susceptibility substantially contributed to the disability or loss"). Therefore, the application of the disease or infirmity exclusion to his case was appropriate.[2]

The plaintiff asserts that it was impermissible for Met Life to raise language in the policy which they had not previously raised on review of the denial of the claim.[3] This argument misstates the holdings of the relevant case law. In <u>Thomspon v. Life Ins. Co.</u>, 30 Fed. Appx. 160 (4th Cir. 2001), the Fourth Circuit held that "[a] *court* may not consider a new reason for claim denial offered for the first time on judicial review." <u>Id.</u> at 164 (emphasis added), accord <u>Glista v. Unum Life Ins. Co.</u>, 378 F.3d 113, 128-29 (1st Cir. 2004). There is no apparent proscription

---

[2] The plaintiff argues vigorously that an allergy is not a disease or impairment. However, the National Institute of Allergy and Infectious Disease appears to disagree. <u>See</u> U.S. Department of Health and Human Services, <u>Understanding the Immune System: How It Works</u>, at 28 (Sept. 2003), <u>available at</u> http://www.niaid.nih.gov/publications/immune/the_immune_system.pdf (defining "allergic diseases").

[3] The plaintiff asserts that Met Life originally conceded that the death was accidental. However, in the first denial, the administrator actually stated: "While decedent's death *may* have been related to an accident, i.e., the bee sting, the Plan excludes accidental losses contributed to or caused by disease and/or physical impairments." Admin. Record at 585 (emphasis added). The court does not read the rationale set forth in the initial denial to concede the occurrence of an accident.

against a plan administrator's use of new information in support of its denial of a beneficiary's appeal of the denial of a claim. However, upon initial denial, the beneficiary must be given "[t]he specific reason or reasons for the adverse determination," and, upon appeal, provided "a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, *without regard to whether such information was submitted or considered in the initial benefit determination.*" 29 C.F.R. §§ 2560.503-1(g)(i)-(ii) and 2560.503-1(h)(iv) (emphasis added). If Congress intended for the plan administrator to be limited to the information and plan provisions considered in the initial review, the right of the claimant to submit new materials would be superfluous.

Finally, the court notes that even if the abuse of discretion standard does not apply, a de novo review of the evidence in this case would produce the same result. The plaintiff is unable to prove that Mr. Hall's unfortunate death was not the consequence of an allergic reaction, and therefore not excluded from coverage under the provisions that state: "no benefits will be payable if the death or loss is caused or contributed to by disease, or bodily or mental infirmity" and "[b]enefits will be paid for bodily injury, either on or off the job, caused solely by accidental means and, independently of all other causes, resulting in death or loss...." Admin. Record at 17 and 37. The evidence that Mr. Hall suffered from anaphylaxis, and that this condition ultimately caused his demise, is overwhelming. His death certificate lists anaphylaxis as the "immediate cause of death," his obituary states that he "suffer[ed] anaphylactic shock from a bee sting," and his family physician noted that he "died July 16, 2004 after suffering anaphylactic shock from a bee sting." Admin. Record at 617, 618, and 596.

Mr. Hall's physician noted that he "had no history of bee sting allergy," but his lack of awareness of his physical predisposition does not diminish the fact that his death was not solely

11

the result of an accident. Admin. Record at 596. It is true, as the plaintiff notes, that the defendants were initially uncertain as to whether the bee sting itself was an accidental occurrence. Admin. Record at 585 ("While decedent's death may have been related to an accident, i.e., the bee sting...."). Whether the bee sting itself was an accident under the terms of the policy is irrelevant, however, because Mr. Hall's reaction to it fell within the parameters of the bodily infirmity exclusion.

## Conclusion

The defendants' motion for summary judgment will be granted. The standard of review applicable to Met Life's claim denial is abuse of discretion. Considering the evidence and pleadings presented under this standard, defendant Met Life did not abuse its discretion in denying the plaintiff's claim for Accidental Death and Dismemberment and Personal Accident Insurance benefits. Mr. Hall died as a result of an anaphylactic reaction to a bee sting, an event that Met Life properly declined to characterize as accidental. Accordingly, the plaintiff's motion for summary judgment will be denied.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 17th day of November, 2005.

*/s/ Jack Conrad*

United States District Judge